UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

EMILIO NOBLE,

                           Petitioner,

  - against -

STATE OF NEW YORK,

                           Respondent.

------------------------------------------------- X

**OPINION AND ORDER**

07 Civ. 8130 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.     INTRODUCTION

Emilio Noble seeks a writ of habeas corpus pursuant to section 2254 of Title 28 of the United States Code ("section 2254"), challenging his state court conviction on one count of grand larceny in the second degree.[1]   Under the terms of a plea agreement, Noble was sentenced to five years' probation and ordered to make restitution to his victim.  Noble asserts that statements he made during his plea allocution demonstrate that he did not understand the crime to which he was pleading guilty, that he was actually innocent of that crime, and that his plea was therefore not knowing and voluntary.  He also asserts that two lawyers provided ineffective assistance of counsel because they failed to recognize and argue this

---

[1]     *See* N.Y. Penal Law ("NYPL") § 155.40.

point.

## II.    BACKGROUND

A Bronx grand jury indicted Noble for stealing tens of thousands of dollars from his employer, Affinity Health Plan ("Affinity").[2]  The Indictment includes one count of grand larceny in the second degree,[3] one count of attempted grand larceny in the third degree,[4] and sixty-five counts of falsifying business records in the first degree.[5]  Each of the sixty-five counts allege a specific date on which Noble, "acting in concert with another [and] . . . acting with intent to defraud and the intent to commit another crime or to aid or conceal the commission thereof, did sign an invoice authorizing the issuance of funds in the amount of [between $995 and $9,475]."[6]  Noble admitted at his plea allocution, and does not now deny, that he requested that checks be cut to an illegitimate vendor who did not provide services to Affinity and who was not entitled to any

---

[2]    *See* Indictment.

[3]    *See* NYPL § 155.40.

[4]    *See id.* § 155.35.

[5]    *See id.* § 175.10.

[6]    Indictment, Count 3.  Count 9 alleges that Noble signed a false invoice for $995, Count 67 alleges $9,475.  The rest of the invoices fall in between.  *See id.*, Counts 3 - 67.

payment.[7]  At the plea proceeding, the Assistant District Attorney alleged that

Noble received some portion of the money paid to the fictitious vendor.[8]  The only

issue raised in this petition is whether Noble's state of mind at the time he

authorized the payments satisfies the mens rea requirement of New York's larceny

statute.[9]

Although Noble hired Larry Bronson to represent him,[10] Robert

Koppelman actually represented him in court.[11]  The nature of the relationship

between Bronson and Koppelman is murky at best, but Noble now claims that

Bronson never paid Koppelman.[12]  In any event, the Supreme Court of New Jersey

---

[7]   *See* Plea Allocution Transcript ("Tr.") at 23.

[8]   *See id.* at 8 ("In our investigation of the case, the defendant has significant assets that have been sucked away and [that] I think are really the proceeds of this crime. . . . [T]here is no doubt whatsoever that the defendant took thousands of dollars from the Affinity Health Care Plan in addition to the six figure salary he was already making[.]").

[9]   *See* NYPL § 155.05(1) ("A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.").

[10]  *See* 9/17/08 Reply Declaration and Argument in Support of Motion Made Pursuant to 28 U.S.C. § 2254 ("Reply") at ¶ 6.

[11]  *See* Tr. at 1.

[12]  *See* Reply at ¶ 6.

-3-

reprimanded Bronson in connection with his representation of Noble.[13]

On April 27, 2004, Noble entered into a plea agreement to one grand larceny count.[14] Although grand larceny in the second degree is a Class C felony under the New York Penal Law,[15] carrying a maximum sentence of fifteen years in prison,[16] Koppelman negotiated a deal under which Noble would serve five years' probation and make restitution to Affinity in the amount of $225,000.[17]

At his allocution, Noble affirmed that he was entering a guilty plea, that he had sufficient time to discuss the plea with Koppelman, and that he was satisfied with Koppelman's advice and counsel.[18] He agreed that the only drugs or medications he was taking – blood pressure medication – did not affect his ability to think, concentrate or understand.[19] He affirmed that he understood he was giving up the right to a jury trial, to have his guilt proved beyond a reasonable

---

[13] *See id.*

[14] *See* Tr. at 3.

[15] *See* NYPL § 155.40.

[16] *See id.* § 70.00.2(c).

[17] *See* Tr. at 3.

[18] *See id.* at 21.

[19] *See id.* at 21-22.

doubt, and to remain silent.[20]  He said that he understood he would be a predicate

felony offender.[21]  He affirmed that he understood the terms and conditions of the

plea agreement and the consequences that would follow if he violated those

terms.[22]

Noble admitted that he "stole property having a value in excess of

fifty thousand dollars."[23]  Noble later clarified that the "total amount of the theft"

probably amounted to somewhere near $250,000.[24]  When the judge inquired as to

"the manner in which [he] stole" the money, Noble answered: "I was authorizing

checks of payments to a vendor."[25]  He confirmed that the vendor was not

legitimate and did not provide services to Noble's employer.[26]  A moment of

temporary misunderstanding followed on Noble's part:

> THE COURT:  Did you know that the vendor was not
> entitled to that payment?

---

[20]  *See id.* at 24-25.

[21]  *See id.*

[22]  *See id.* at 28, 31.

[23]  *Id.* at 22.

[24]  *Id.* at 23.

[25]  *Id.*

[26]  *See id.*

THE DEFENDANT: No, your Honor.

THE COURT: You did not know that he was?

THE DEFENDANT: Sorry?

THE COURT: Was he entitled to the payment that you were authorizing?

THE DEFENDANT: Was he entitled to payment?

THE COURT: Did he do anything to earn that money?

THE DEFENDANT: No, your Honor.[27]

The court then asked if the allocution was acceptable to the People, and the Assistant District Attorney replied that it was.[28]  Neither Noble nor his attorney made any further statements.

Less than two months later and after retaining a new lawyer, Joseph R. Daniels, Noble moved to vacate his guilty plea.[29]  The motion stated that Noble had been under "extreme duress" at the time of his plea citing, *inter alia*, pressure from the court and mistrust of Koppelman, but made no mention of the brief

---

[27]   *Id.* at 23-24.

[28]   *See id.* at 24.

[29]   *See* 6/2/04 Notice of Motion to Withdraw Guilty Plea ("Withdrawal Motion"), Ex. 1 to 8/13/08 Affidavit in Opposition to Petition for Habeas Corpus ("Op. Aff.").

misunderstanding that occurred at the plea allocution.[30]  The trial judge denied his motion.[31]

Noble then retained Labe M. Richman who filed an appeal with the Appellate Division.[32]  On appeal, Noble argued, *inter alia*, that his negative reply to the judge's query at the allocution – "[d]id you know that the vendor was not entitled to that payment?" – demonstrated that he lacked the proper state of mind for larceny.[33]  The Appellate Division denied the appeal.[34]  The New York Court of Appeals denied Noble's application for leave to appeal.[35]

Noble filed the instant petition on September 17, 2007, and a supplemental petition on May 8, 2008.  Noble argues that his plea was not knowing and voluntary because he did not understand that the crime of larceny requires a culpable mind – and he had not, in fact, possessed the requisite intent at

---

[30]  Withdrawal Motion at ¶ 7.

[31]  *See* 7/13/04 Denial of Motion to Withdraw Appeal, Ex. 3 to Op. Aff.

[32]  *See* 1/18/06 Appellant's Brief ("App. Br."), Ex. 9 to Op. Aff.

[33]  *See id.* at 9-16.

[34]  *People v. Noble*, 816 N.Y.S. 2d 352 (1st Dep't 2006) (slip op.).

[35]  *People v. Noble*, 822 N.Y.S. 2d 490 (2006).

the time the payments were made.[36] He also argues that Koppelman provided

ineffective assistance of counsel because, *inter alia*, he was not the lawyer Noble

originally hired and because he failed to halt the plea proceeding after Noble's

purported denial of culpability at the allocution.[37] Finally, Noble argues that

Daniels provided ineffective assistance of counsel because: (1) he failed to argue

in the plea withdrawal motion that the trial court's failure to adequately clarify the

facts underlying the admitted crime violated New York law; and (2) he failed to

file the plea allocution transcript that would have supported this position.[38]

## III.   LEGAL STANDARDS

### A.   Section 2254 Standard

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). The AEDPA provides that a federal court can

grant a writ of habeas corpus to a state prisoner only if the state court's denial of

relief "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

---

[36] *See* 9/17/07 Complaint and Attorney Affirmation and Argument in Support of Motion Made Pursuant to 28 U.S.C. § 2254 ("Compl.") at ¶¶ 3-8.

[37] *See* 5/8/08 Supplemental Habeas Petition Made Pursuant to 28 U.S.C. § 2254 at ¶ 9.

[38] *See* Compl. at ¶¶ 9-18.

States."[39] As explained by the Supreme Court, a state-court decision is "contrary

to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's
> precedent if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law.  Second,
> a state-court decision is also contrary to this Court's
> precedent if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court
> precedent and arrives at a result opposite to ours.[40]

With regard to the "unreasonable application" prong, the Supreme Court has stated

that

> a state-court decision can involve an "unreasonable
> application" of this Court's clearly established precedent in
> two ways.    First, a state-court decision involves an
> unreasonable application of this Court's precedent if the
> state court identifies the correct governing legal rule from
> this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this
> Court's precedent if the state court either unreasonably
> extends a legal principle from our precedent to a new
> context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should
> apply.[41]

---

[39]  28 U.S.C. § 2254(d)(1).

[40]  *Williams v. Taylor,*  529 U.S. 362, 405 (2000).

[41]  *Id.* at 407.

-9-

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be objectively unreasonable."[42] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[43] While the test requires "'[s]ome increment of incorrectness beyond error . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[44] Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[45]

---

[42] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). *Accord Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[43] *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[44] *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations)).

[45] *Williams*, 529 U.S. at 411.

## B.    Plea Allocution

A state court violates due process if it accepts a guilty plea without an

affirmative showing that the plea is knowing and voluntary.[46]  That plea must be

the product of "a voluntary and intelligent choice among the alternative courses of

action open to the defendant."[47]  The purpose of the court's "knowing and

voluntary" inquiry "is to determine whether the defendant actually *does*

understand the significance and consequences of a particular decision and whether

the decision is uncoerced."[48]

Under the federal constitutional standard, a state court should

determine the voluntariness of a guilty plea after "considering all of the relevant

circumstances."[49]  A state court may satisfy this requirement by conducting a

factual basis inquiry at the plea allocution, where the defendant is asked "to

explain, in his own words, the factual basis for his plea."[50]  Moreover, on habeas

---

[46]    *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[47]    *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  *Accord Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).

[48]    *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (emphasis in original).

[49]    *Willbright*, 745 F.2d at 780 (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)).

[50]    *Id.* (citations omitted).

review, "[a] state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness[.]"[51] The petitioner must "rebut[] the presumption of correctness by clear and convincing evidence."[52]

## C.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees a fair and competent counsel in all criminal prosecutions.[53] Under *Strickland v. Washington*, a criminal defendant claiming ineffective assistance of counsel must make two showings.[54] First the defendant must show "that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[55] Second, "the

---

[51]   *Murray v. McGinnis*, No. 00 Civ. 3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001) (citing 28 U.S.C. § 2254(e)(1); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Senna v. Patrissi*, 5 F.3d 18, 20 (2d Cir. 1993)).

[52]   28 U.S.C. § 2254(e)(1).

[53]   *See* U.S. Const. amend. VI.

[54]   *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.") (citation omitted).

[55]   *Strickland*, 466 U.S. at 687.

defendant must show that the deficient performance prejudiced the defense."[56]

## 1.    Deficient Performance

To establish deficient performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[57] Because there is usually no single effective strategy for effectively representing a criminal defendant under a given set of circumstances, a court's "scrutiny of counsel's performance must be highly deferential."[58] A habeas petitioner cannot obtain relief by "show[ing] merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."[59] Conversely, "[f]ailure to make a meritless argument does not amount to ineffective assistance."[60]

The Supreme Court "[has] declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper

---

[56]    *Id.*

[57]    *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

[58]    *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.").

[59]    *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)).

[60]    *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (citation omitted).

-13-

measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[61] Courts analyzing this prong of the *Strickland* test in the context of guilty pleas have considered, *inter alia*, a defendant's assertion of confidence in his counsel at the plea allocution, statements that he understood the terms of his plea agreement, and the quality of the plea terms negotiated by allegedly defective counsel.[62]

## 2. Prejudice

Under the second prong of *Strickland*, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a

---

[61]    *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

[62]    *See, e.g., Lugo v. Artuz*, No. 05 Civ. 1998, 2006 WL 2463547, at *6 (S.D.N.Y. Aug. 23, 2006) (finding counsel's performance effective where the "greatly reduced sentence" negotiated by counsel "belie[d] any claim of ineffective assistance" and where petitioner agreed with the judge's comment at sentencing that he had "an excellent lawyer"); *Pelaez v. O'Connell*, No. 04 Civ. 5067, 2005 WL 1790131, at *6 (S.D.N.Y. July 27, 2005) (finding counsel effective where, *inter alia*, petitioner had faced a minimum sentence of 36 to 72 months' imprisonment but petitioner's sentence under the plea agreement was 27 to 54 months); *Owens v. United States*, No. 01 Civ. 9229, 2002 WL 31357734, at *2 (S.D.N.Y. Oct. 17, 2002) (finding counsel's performance effective where petitioner received "a more lenient prison term than he could have received had he been convicted at trial" and where petitioner "allocuted that he was satisfied with his counsel's performance . . . and that he understood the terms of the plea agreement").

-14-

criminal proceeding if the error had no effect on the judgment."[63]  In most cases,

the petitioner must affirmatively prove prejudice.  Where a petitioner argues that

ineffective counsel caused him to make an improper guilty plea, he "must show

that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial."[64]

### D.    New York Law

Under *People v. Serrano*,[65] a criminal defendant in New York state

may challenge the sufficiency of an allocution on direct appeal if the sentencing

judge failed to ascertain that the defendant's plea was knowing and voluntary.[66]

The defendant must ordinarily preserve a challenge to the factual sufficiency of a

plea allocution by moving to withdraw his plea or to vacate his judgment of

conviction during the proceedings.[67]  However, New York courts recognize that

"where the defendant's recitation of the facts underlying the crime pleaded to

clearly casts significant doubt upon the defendant's guilt or otherwise calls into

---

[63]  *Strickland*, 466 U.S. at 691.

[64]  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[65]  15 N.Y.2d 304 (N.Y. 1965).

[66]  *See People v. Lopez*, 71 N.Y.2d 662, 666 (1988) (citing, *inter alia*, *Serrano*, 15 N.Y.2d 304 (1965)).

[67]  *See Lopez*, 71 N.Y.2d at 665.

question the voluntariness of the plea . . . the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary."[68]  Where this duty is breached, "the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made."[69]

## IV.   DISCUSSION

Noble has not rebutted the presumption that the state court properly found his plea to be intelligent and voluntary.  Koppelman's performance did not fall below an objective standard of reasonableness simply because he did not seize on a momentary misunderstanding between the state-court judge and Noble as evidence that Noble's plea was not knowing and voluntary.  Furthermore, even though Noble's motion to withdraw his plea was unsuccessful, Noble cannot show prejudice because he challenged the sufficiency of his allocution on direct appeal – a challenge that the New York Appellate Division found to be without merit.[70]

---

[68]   *Id.* at 666 (citations omitted).

[69]   *Id.*

[70]   *See People v. Noble*, 816 N.Y.S. 2d at 352.

### A.   Noble Has Not Rebutted the Presumption that the State Court Found His Plea to be Knowing and Voluntary

Noble's argument that his supposed denial of criminal intent during

the plea allocution shows that his plea was not knowing and voluntary is not

convincing.  The conversation in question was brief and ambiguous:

> THE COURT:  Did you know that the vendor was not entitled to that payment?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: You did not know that he was?
>
> THE DEFENDANT: Sorry?
>
> THE COURT: Was he entitled to the payment that you were authorizing?
>
> THE DEFENDANT: Was he entitled to payment?
>
> THE COURT: Did he do anything to earn that money?
>
> THE DEFENDANT: No, your Honor.[71]

Taken literally, Noble's statement – "[n]o, your Honor" – would amount to a

denial of the requisite state of mind.  If true, this would mean that Noble was the

unwitting tool of his accomplice, and that he only admitted that he "stole" the

---

[71]   Tr. at 23-24.

-17-

money,[72] but not that he committed larceny,[73] because he did not understand that
larceny required a culpable mind.  However, it is also possible that, by answering
"[n]o, your Honor," Noble meant to affirm the underlying assertion buried in the
judge's question, *i.e.*, that the "vendor was not entitled to that payment."  The
judge sought to clarify Noble's response.  Unfortunately, after another confused
exchange, the judge restated the question in such a way as to omit the pertinent
inquiry: Noble's state of mind at the time the payments were made.  Regardless,
no one at the allocution sought any further clarification.[74]

On this record, it is impossible to conclude that the state court, after
considering all the circumstances, improperly found that Noble's plea was
knowing and voluntary.  Noble admitted numerous times that he "stole" money,[75]
he admitted that he had committed a theft,[76] and confirmed the details of the crime
itself.  The additional affirmations that he made at the allocution – that he
understood the plea agreement, was satisfied with his representation, had time to

---

[72]  *Id.* at 22.

[73]  *Id.* at 23.

[74]  *See id.* at 24 (the prosecutor agreed that the allocution was sufficient; the
defense did not say anything).

[75]  *See id.* at 22.

[76]  *See id.* at 23.

discuss the plea agreement with his attorney, and understood the rights he was surrendering[77] – amply support the state court's findings.

## B.   Counsel's Performance Did Not Fall Below an Objective Standard of Reasonableness

Noble has not shown that Koppelman provided ineffective assistance of counsel.[78]   At the allocution, Noble affirmed that he was satisfied with Koppelman's advice and that he had sufficient time to discuss the plea agreement with Koppelman.[79]   The terms and conditions of the plea agreement were discussed at length and Noble affirmed several times that he understood them.[80] Although the crime to which Noble pled guilty carries a maximum sentence of fifteen years in prison,[81] Koppelman negotiated a plea agreement whereby Noble would serve five years' probation and pay restitution to his victim.[82]

---

[77]   *See id.* at 31, 21, 24-25.

[78]   Noble's relationship with Bronson is irrelevant to this determination. Koppelman was the lawyer who represented Noble during his plea negotiations and at the plea allocution.

[79]   *See id.* at 21.

[80]   *See id.* at 24-31.

[81]   *See id.* at 5.

[82]   *See id.* at 3.

Moreover, Noble cannot demonstrate ineffective assistance merely by alleging that Koppelman did not terminate the allocution proceeding when Noble arguably appeared to deny criminal intent.  Given the ambiguities in that brief, confused exchange, particularly when viewed in the context of the entire allocution, it is impossible to conclude that Koppelman's performance fell below an objective standard of reasonableness.  Petitioner has not shown that Koppelman's performance was ineffective.

### C.    Even If Counsel's Performance Was Ineffective, Noble Was Not Prejudiced

Noble argues that Daniels' performance fell below an objective standard of reasonableness because Daniels: (1) did not include the plea allocution transcript in the motion to withdraw Noble's guilty plea; and (2) did not raise the alleged *Serrano* issue.[83]  The Court need not decide this issue, however, because even if Daniels' performance fell beneath an objective standard of reasonableness, Noble was not prejudiced as a result.

Represented by his current attorney, Noble raised the *Serrano* issue on appeal.  Noble filed his appeal with the Appellate Division in early 2006.[84]  In a

---

[83]    *See* Compl. at ¶ 11.

[84]    *See generally* App. Br.  Petitioner challenged both the judgment of the trial court and that court's denial of Nobles's motions to withdraw his plea and vacate

brief opinion, the Appellate Division concluded that the plea "was knowing, intelligent and voluntary. When viewed in light of the entire plea proceeding, there is nothing in defendant's factual allocution that casts doubt on the defendant's guilt or the voluntariness of his plea."[85]

Noble had the opportunity to argue the *Serrano* issue on appeal, he availed himself of that opportunity, and the argument was found to be without merit. Therefore, Daniels' failure to argue the *Serrano* issue when moving to withdraw the plea did not prejudice petitioner. Because the plea allocution transcript would not have altered this outcome, Daniels' failure to include it in his moving papers did not prejudice Noble. Thus, Noble has failed to prove that his conviction should be vacated based on ineffective assistance of counsel.

## V.   CONCLUSION

The remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[86] A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that

_____

his conviction. *See id.*

[85]   *Noble*, 816 N.Y.S.2d at 352.

[86]   28 U.S.C. § 2253(c)(2).

-21-

reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[87]  Petitioner has made no such showing. Accordingly, I decline to grant a certificate of appealability.

      For the foregoing reasons, petitioner's motion for habeas relief is denied.  The Clerk of the Court is directed to dismiss the petition [Document #1 on the docket] and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
         December 10, 2008

---

[87]  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

## - Appearances -

**For Petitioner:**

Labe M. Richman, Esq.
305 Broadway, Suite 100
New York, NY 10007
(212) 227-1914

**For Respondent:**

Rither Alabre
Nancy D. Killian
Assistant District Attorneys
Bronx County
198 East 161st Street
Bronx, NY 10451
(718) 590-2156